Ready? Okay. Good morning, Your Honor. Carrie Yonalos for Petitioner, Rudy Schrandt-Blumenbach. And if I tend to speak too fast, please stop me, because sometimes I do that when I'm nervous. I'd also like to reserve two minutes for rebuttal. You have to watch the clock yourself. Okay. This case is about, it's an upside-down pyramid, basically, about a prior deportation. The case was defective from the beginning. It dates back to 1989. The petitioner in this case was in deportation proceedings for a violation of a narcotics drug charge and eligible at the time for 212C relief. At that time, the rules were far different than they are now. One had 10 days for appeal. Respondents did not appear at the general master calendar proceedings where court dates, et cetera, were set. The attorney appeared. The attorney who retired, Gary Green, who has since been disbarred, didn't appear. In this particular case, as I understand it, there was no compliance with Lozada. Is that right? No, Your Honor. There was no compliance with Lozada. The reason being that the petitioner Mr. Schrant had no idea that his attorney had failed to appear. He had no contact. He was given no indication, no notice of the court date. He was not given notice by the court. The court simply notified Mr. Green, did not notify Mr. Schrant, nor did they notify the court. But that's way back when. He then made a motion to reopen or for reconsideration. That's after he was picked up. He first found out that he had been already deported and was in custody. He made that motion. He made that motion. He had a hearing. It was denied. Actually, he did not have a hearing. The motion was denied in any event. The motion was denied merely on the basis of Lozada. It's important to note that the service did not oppose Lozada's request. Wait a minute. The motion was denied. Yes. And he did not he had to stay in the interim. The stay did not purport to go, on its face anyway, through the time for filing an appeal. He filed a notice of appeal, but by that time he had been deported. He wants to claim now, if I understand it, that the deportation was illegal. Yes, Your Honor. He could have made that same claim then by appealing to us and saying I was illegally deported. He did not. No, he was in Chile. I understand that. He did not. He, his representatives, whatever, did not pursue an appeal with this court, although he had a right to. No, Your Honor. Back then, I believe in 1989, once the respondent was removed from the country, that he had no right to go before this court. Unless the removal was illegal. If the removal was illegal, he could bring that before this court and say, oh, wait a minute, they illegally removed me, so I haven't been removed at all, so the BIA should have heard my appeal and didn't. You guys should send it back. But he didn't do that, right? I have two points to contest on that. One, I believe he was advised by his attorney that he was not able to do that because under 106C, I believe it is, once he had been removed from the country, he had no access to the court. And number two is that an illegally executed deportation is not cured by the fact that he did not access his rights in 1989. The due process violations of both ineffective assistance of counsel and of the agency not following its regulation stays. It's not something else. I don't know if that's right. I would think that once formal legal action has been taken, it's presumably correct, and the burden is on the party who thinks it's incorrect to make it a timely and appropriate challenge. I believe under both Wietersburg and Mendes, both of those Respondents waited a considerable amount of time from the time they could have filed their appeal or their attack on their, collateral attack on their deportation order. I think in Wietersburg, it was almost 15 years as well, and that the court found that this was not an onerous burden or that they had no access to the court. If I've got this right, I may not. It's sort of complicated in a lot of cases. But I'm thinking his attack on his earlier deportation is ineffective assistance of counsel rising to the level of a due process violation. Yes. He moves to reopen. Yes. The motion to reopen is denied. But in his motion to reopen, he never did comply with Lozada. No, Your Honor. And I believe this Court has said that. Is that true so far? Do I have the facts right? Yes, Your Honor. Okay. And that is because his counsel in 1989 believed it was a better exercise of her time and energies while he was in custody. Remember, in 89, you only had 10 days to file the appeal. In this case, 13, because the notice was mailed. So to file the appeal to the BIA takes a considerable amount of time. This is a sole practitioner who filed his appeal and an excellent attorney. And she put her efforts to try to get the motion to the board. What does any of that matter? Once you have a lawyer, the lawyer makes some judgments about how to proceed. At least the lawyers know that. Sometimes they don't work out and the client is still bound. I don't get it. I believe that what happened here – you mean the 89 lawyer or the lawyer that failed to appear and failed to notify him that put him in that in absentia? The one in the middle. Okay. The one in the middle. Okay. In fact, Lozada, remember, was a brand-new case at that time, and you just decided – it had just been decided by the BIA a year earlier. And this Court has not had the opportunity to fashion out the exceptions or to that, nor were people particularly familiar with that. The fact that someone doesn't comply with Lozada doesn't negate the fact that there was a gross due process violation, nor does making a bar complaint cure that. The purpose behind Lozada was to make sure that the complaint – How do I even know there was a gross due process violation? For all I know, the lawyer said, I'll appear, but you have to pay me my retainer first. Unless you're in here by the day before your hearing with $500, I'm not going to  appear. And the client doesn't come in, and the lawyer doesn't appear. I believe that the Immigration Court specifically accepts and does not allow failure to pay as a failure to appear for the client. It may be so in civil court, but it is not so in the Immigration Court, and that is in the Immigration Court rules. Failure to pay is not a reason to not come in. The client must, you know, fire you, and you must be withdrawn from the court. Otherwise, if you filed a G28, you are responsible for that. That's just a detail. Certainly. Maybe he said to the client, before I'll go in, you've got to bring me your papers, and you've got to come in and talk to me, and you've got to tell me about your case and what your position is. And the client didn't do that. If I may. All Judge Kleinfeld is saying is without notice to the lawyer, who knows? Excuse me, but this is assuming facts not in evidence, and the facts that are in evidence indicate that this lawyer appeared four times for the client, and each time, you know, he asked the court for time to prepare and time to prepare. Now, you see, it's not assuming any facts not in evidence. It's not assuming anything. It's just saying the purpose of Lozada is to require the client to tell the lawyer, you fouled up, so the lawyer can say to the Immigration Court, I didn't foul up at all. These are the facts. But that didn't happen here. If we're worrying about Lozada. Well, understand this client was in custody and had 10 days to get his motion to the BIA. The real crux at that point, not assuming the Lozada argument, is that the service did not oppose this motion. The service believed this was incompetency of counsel. Gary Green, the attorney, has since been disbarred. He had been disciplined. He was back in practice for the two years that this, you know, he represented Mr. Schramm. And then he was, you know, disciplined again, and as of 1996, he was completely disbarred. So the other really strong issue here is that the government failed to follow its own regulations in that when you file an appeal and the judge grants a stay, that stay continues to the date that the appeal period ends. This was later, you know, recognized in case law and codified. However, at the particular time, it was the practice, the service agreed. What happened here is that the deportation of the defendant was not in effect until the court acted on the motion. And the court denied the motion. The stay then was no longer in effect. Isn't that correct? No, Your Honor. The stay goes, and this has been the practice. I've been in immigration law for 22 years. It has been the practice that it goes to the end of the appeal. And this is what was later codified in 242B. Even though in the papers it says this stays until the end of the appeal. The stay shall go in effect until the motion has been acted upon? Yes, because until the appeal is taken or waived, the order is not final. There are three little boxes that are checked off, as I understand it. And one of them was till the end, till the motion has been acted upon. The other box that was not checked would have been extending the stay until the everything was done. Your Honor, that was not the practice in the court. And if it did not, certainly the court would not have, you know, recognized it in case law a year later, nor would it have, immigration law, have codified it if that were not the way it was to be interpreted. And the fact, a due process violation doesn't exist only when the law, when a case says it. The case identifies it. So if it existed a year earlier, it certainly should be followed by that case law.  And if it's not, then it's not a violation.  If it's not, then it's not a violation. Otherwise, the day after, they should have moved him out. Why did they wait 12 days? They waited 12 days because they thought it was 10 days from the time of appeal and didn't calculate in the three days for mailing. Right? To not have it follow through on that timing would put an unintended limitation on an alien's right to appeal. And he does have a right to appeal to the board. Judicial review to this Court is not by right, but it certainly is to the Board of Immigration Appeals. And the Immigration Service at that time could have simply, you know, exercised deportation authority and executed deportation in violation of the right to appeal and the right to access, equal access to justice by moving everybody out of custody, you know, to deporting them out of the country and thus negating their right to appellate review. And this is not intended in the law, and it is unpermissible to use their deportation authority. So the right. Thank you for your answer. Thank you, counsel.  Any other questions? Your time has expired. Thank you, counsel. Good morning, and may it please the Court. My name is Jocelyn Wright. I'm here on behalf of Respondent, the United States Attorney General. We believe there are two issues before the Court. Our primary position is that Mr. Schrantt.  It's hard to hear you. I'm sorry.               I'm here on behalf of Respondent, the United States Attorney General. We believe there are two issues before the Court. One is the issue of previous removal proceedings, the finality and the validity of his prior deportation in absentia order that was entered in 1989. And the second issue is, assuming that he can, he still cannot prevail in this petition for review. What did you just say? I couldn't understand. The second issue is that even if he could attack it, it's a meritless attack because the prior deportation was valid, and so he can't prevail in this petition for review. Well, counsel, let me just ask you, can't we put aside his failure to meet the Lozada requirements and reach the issue of ineffective assistance of counsel? I don't believe so, Your Honor. And why not? Let me put it into context. Mr. Stratton's attorney has repeatedly said that at the time, in 1989, at that time, his attorney made, Ms. Velazquez, made the decision that her efforts would be best put towards the motion to reopen rather than, the appeal of the motion to reopen, pardon me, rather than seeking a stay of deportation, because it was her understanding that the stay was in effect until the appeal was taken and until the appeal was resolved. And what is your response to that argument? Well, at that time, actually, the 10 days was certainly for the notice of appeal. In this case, it was 13 days because it was serviced by mail. But she didn't have to have the appeal filed with the Board of Immigration Appeals. At that time, the regulations bear this out as well as the record. In this case, all the attorney had to do was file the notice of appeal with the local immigration court who issued the order of deportation. Now, after 1989, that procedure did change. But at the time that this removal order, I'm sorry, the deportation order in this case was issued, all she had to do was walk that notice of appeal to the immigration judge. Which raises the specter of ineffective assistance of counsel, if that's all she had to do. Well, but that's of the middle counsel, not of Mr. Green. But again, if she made the considered decision in her opinion that her efforts would be best served towards the appeal itself rather than seeking an interim stay, it's arguable whether or not that's a valid legal strategy that she chose to pursue instead. And the second point is, Mr. Schrantt relies on the regulation and says that if you did not go into effect or was not in full effect until the notice of appeal was filed or that the board decided the notice of appeal, that the deportation of the alien would deprive the alien of the right to appeal. I have to say that, yes, he does have a right to appeal administratively to the Board of Immigration Appeals. That right does not come with a right to a stay if the order was issued in absentia, and the regulations are very clear on that. And the fact that the regulation itself says that the immigration judge, upon the filing of a motion to reopen an in absentia deportation order, says that the judge may issue a stay pending his determination of the motion and also pending the taking of an appeal if the motion is denied, says first to me that, one, even if the immigration judge accepts the motion to reopen in the first instance, there is no absolute right to an immediate stay of deportation. And he may, in his discretion, go ahead and issue a stay of deportation pending his determination of the motion, but it doesn't confer a right to a stay in the meantime. If the judge does deny the stay, the alien has the avenue to seek a stay of removal with the district director of the INS. And if the district director says, no, I don't think a stay is warranted either, then he can file a stay with the Board of Immigration Appeals. All those avenues are open. So it's not like a stay was mandatory and a right concurrent with a right of appeal. Do I have it right that he's not exactly arguing ineffective assistance? He's arguing denial of due process because he was not properly allowed to address ineffective assistance in his motion to reopen? Yes. Because he's not alleging ineffective assistance of Ms. Velazquez. Her motion alleged ineffective assistance of Mr. Green. However, and even in the motion to reopen appeal that she filed, the brief that she filed, and, again, at that time not only was the notice of appeal required to be filed with the Board, so were all of the briefs. And only after the immigration court has the briefs and the notice of appeal in hand is the whole record forwarded to the Board of Immigration Appeals for adjudication. And if you look at the notice of appeal that was filed, the date stamp on that says that it was accepted by the Executive Office for Immigration Review, Office of the Immigration Judge in San Diego. And there's a letter also in the record. I think it's at page 331 of the administrative record. There's a letter from the immigration court to the Board of Immigration Appeals saying, this file is being forwarded to you for adjudication on the appeal. And so everything was to be done with the immigration court until that file was forwarded to the Board of Immigration Appeals. And, again, subsequently that did change in the practices now that everything is filed with the Board of Immigration Appeals. But at that time, the current process did not apply. And so when she did file her brief, it was in, I believe, she didn't file her brief until January 22nd, 1990, which was over a month after Mr. Strand had already been removed. Yet her brief didn't assert any type of violation of due process or that the INS disregarded its own regulations in deporting him prior to her filing the notice of appeal. And that could have been an issue that could have been exhausted to the Board of Immigration Appeals as a basis for reopening the case. And as Judge Fernandez pointed out, certainly he wasn't precluded from taking a, from filing a petition for review in this court to challenge the Board's denial of his motion, the Board's decision not to hear his motion to reopen appeal based on his deportation that he alleges was invalid because it was a deprivation of due process. Understandably, his attorney, again, may have decided, well, if my reading of 1105 AC is correct, the court lacks jurisdiction. And if that's, you know, her reading of the law, then it's arguable whether or not, again, that's a strategic position that she took or whether it's malpractice. But in any event, none of the government's actions in this case amounted to a deprivation of due process. And so if there is any type of action against the private attorneys, an action for malpractice, for example, the remedy is against the private attorney and not against the government. And since there was no due process deprivation or violation by the government, there can be no basis for granting a remand or a reopening of this case based on the prior deportation. And as to the validity of this current removal order, there's been he has conceded that assuming that he cannot challenge the prior removal order or assuming that it was the prior deportation order and assuming that it was a valid order, he is properly in removal proceedings at this time and he has conceded the charge of removability. And because he's conceded that charge of removability as an overstay, as the immigration judge properly found, he isn't eligible in any event for any relief from removal as it stands right now because of his aggravated felony convictions in the past that formed the basis of his first deportation proceedings. Because of his aggravated felony convictions, he is prohibited or precluded from establishing good moral character, so he's no longer eligible for voluntary departure. He's no longer eligible. We've asked a lot of questions about Lozada and whether he was properly, whether the ruling not to reopen was proper or not. It's striking me that that might be putting the cart before the horse. Isn't the question, the first question, was he illegally removed? Because if he was not illegally removed, i.e., if taking him out of the country was not an illegal act by the INS, then it's all over, isn't it? If he was not illegally removed, then, indeed, he lost his right to appeal when he was removed. And that's the end of that, isn't it? That's correct, Your Honor. And there's been no indication that there was a stay in effect. There was a stay in effect, but. Is there any authority that if he was legally removed and lost his right to appeal, he can go back and collaterally attack the underlying decisions in a later case? No, Your Honor. The only decisions in this circuit that say that allow an alien to collaterally attack prior deportation proceedings arise in the context of criminal proceedings for criminal prosecutions for illegal reentry. And even in those cases, the Court has required that even if you can, even if you allow the collateral attack, there has to be prejudice to the alien before the prior deportation order will be even vacated. And if the Court has any further questions, can we ask that this petition for review be dismissed? Thank you. Thank you, counsel. The time is exhausted. The Tramp-Wumenbach v. Ashcroft is submitted, and we are adjourned. Thank you.
judges: Dw Nelson, Fernandez, Kleinfeld